November 12, 2007

Charles McGregor
7204 Grand Ave
Downers Grove IL 60516



RE:  Charles McGregor
     Process and Facilities Systems Inc
     Claim Number: H31272-1-xxxxx9047-978

Dear Mr. McGregor

We received your response to our October 10, 2007 letter regarding our review of the claim you submitted for Life Coverage During Disability benefits in August 2007 under the group policy issued to Process and Facilities Systems Inc. (the "Policy").   Please read this letter in its entirety for information regarding the status of your claim.

On August 20, 2007 we received a claim for benefits provided under the policies issued to Process and Facilities Systems Inc. Your claim for short term disability and long term disability benefits were approved. During our review we found that Member Life Insurance Coverage became effective on 2-1-2006. According to the terms of the group term life insurance policy issued to your employer, Process and Facilities Systems Inc, the Member Life Insurance benefit is equal to two times the Member's Basic Annual Compensation. However, in order to be eligible for Member Life Insurance coverage in excess of $100,000.00 Proof of Good Health was required.

Our records show that your salary effective 2-1-2006 and your salary increase effective 4-1-2006 required you to complete and sign a Health Statement, as your Member Life Insurance benefit exceeded $100,000.00.  Therefore, a Health Statement – IL (the "Health Statement") was completed and signed by you on 12-28-2005 and 4-17-2006.  The additional salary increase effective 12-1-2006 did not require a Health Statement as the increased Member Life Insurance benefit was less than a 10% increase and is not required following a previously approved Health Statement if the increased benefit is 10% or less.

Based on the medical information received, and the Health Statements you submitted when applying for Member Life Insurance coverage in excess of $100,000.00, we have concluded that you submitted false statements, made omissions and material misrepresentations regarding your health information.  Principal Life would not have approved your Member Life Insurance coverage in excess of $100,000.00, under the Policy, had it been advised of your complete medical history at the time of enrollment and/or request for increased coverage.

**HEALTH STATEMENT**

You answered "no" to 4 of the 4 questions relating to medical conditions and treatment on the

Page 2 of 4

Health Statements dated 12-28-2005 and 4-17-2006 (a copy of which is enclosed). Based on our review of your medical records, the information provided on your Health Statements was false and you misrepresented material facts regarding your health.

The Authorization, Acknowledgement, and Signature section of the Health Statements, signed by you on 12-28-2005 and 4-17-2006, includes the following statements:

- I represent information, statements, and answers on this form, and any attachments, are complete and true to the best of my knowledge. They are a part of this request for coverage under the group policies. I agree Principal Life is not liable for anyone's claim which happens or begins before the effective date of coverage or approval of any life and disability coverage.

- **I have read, or had read to me, the questions and responses and realize any false statements, omissions or material misrepresentation regarding age or health information could cause life and disability coverages, if issued, to be cancelled as never effective.**

- **Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, may be guilty of insurance fraud.**

- I understand all policy provisions for medical coverage will apply. If approved for life and disability coverages, all policy provisions will apply including, but not limited to preexisting conditions restriction, the Actively at Work and Period of Limited Activity provisions.

- I understand an agent cannot change or waive any rates, benefits, or provisions of any policy, if issued, without the written approval of an officer of Principal Life.

- For life and disability coverages, I authorize any doctor, health care provider, hospital, clinic or medically related facility, insurance company, consumer reporting agency or employer, that has any personal information, including physical, mental, drug or alcohol use history, regarding me or any dependent, to give to Principal Life, its agents and employees performing business transactions, any such data.

- I authorize Principal Life to release any such data as required by law. When signed in connection with any application for, reinstatement of, or request for change in benefits, this form shall be valid for two years after the date shown below. I understand I may revoke this authorization for information not then obtained. A photocopy of this form shall be as valid as the original.

- I understand the data obtained by use of this authorization will be used by Principal Life for claims administration and to determine benefit eligibility for life and disability coverage. This information will not be used for any purposes prohibited by law.

Page 3 of 4

## SUMMARY

Because your initial salary effective on 2-1-2006, the date insurance coverage became effective, resulted in Member Life Insurance coverage in excess of $100,000.00, you were required to provide Proof of Good Health in the form of a Health Statement. This Proof of Good Health is required in order for our underwriters to evaluate a person's medical history and determine if that person qualifies for coverage. You completed Health Statements on 12-28-2005, and on 4-17-2006 representing that you were not currently receiving medical treatment; you had not consulted with a doctor or had diagnostic tests in the past 5 years; and you had not been diagnosed with or received treatment for any diagnosis listed on the Health Statements. Based on the information you provided on the Health Statements, coverage, in excess of $100,000.00, was approved by Principal Life effective February 1, 2006, with increases in coverage effective April 1, 2006 and December 1, 2006.

However, the medical records received by Principal Life, in connection with your claim for Coverage During Disability benefits, show that you had in fact received medical treatment as listed below:

    Medical records from Dr Kiran Kumar's office obtained 9-24-2007 indicate the following:

- A letter from Dr Keith Gordey at Suburban Pulmonary and Sleep Associates LTD, dated 3-17-2006 to Dr Kiran Kumar. This letter outlines a medical follow-up dated 3-17-2006 in which the follow-up chest CT scan on 3-10-2007 was discussed as well as answering questions regarding an abnormal pulmonary function test. Follow-up was recommended.

- Report of a chest CT scan dated 7-22-2005 showing nodules were detected.

- Report of a chest CT scan dated 3-10-2006 for clinical history of pulmonary nodules follow-up

- Report dated 3-2-2006 from Fairview Family Practice to establish care with a new Primary care provider, referrals for Lung CT and Pulmonologist. Chief complaint was noted as nodules on lungs. Laboratory tests were ordered.

Because you made false statements, omissions and material misrepresentations regarding your health information, Principal Life has the right to cancel your Member Life Insurance in excess of $100,000.00, under the Policy, as if never effective.

Moreover, if you had provided complete medical information when you completed the Health Statement on 12-28-2005 and 4-17-2006, further investigation would have been conducted by our underwriters to determine your insurability, and additional medical records would have been required to determine whether you were eligible for coverage in excess of $100,000.00. Based upon the medical records now received by Principal Life, for treatment prior to 2-1-2006, our underwriting department would not have approved Member Life Insurance coverage in excess of $100,000.00 for you under the terms of the Policy.

Page 4 of 4

**RESPONSE REQUESTED**

We are offering you the opportunity to voluntarily rescind your Member Life Insurance coverage in excess of $100,000.00, which will cancel that additional amount of coverage as if never effective. You may rescind such coverage by signing and returning the enclosed Voluntary Rescission of Group Term Life Insurance Coverage. Upon receipt of the executed Agreement, Principal Life will refund the applicable Member Life Insurance premiums for the Member Life Insurance coverage in excess of $100,000.00. Your Member Life Insurance coverage in the amount of $100,000 00 will remain in effect as long as your coverage continues under the Policy. Please respond within 15 days from the date of this letter.

If you have any questions regarding the relevant policy provisions or information considered please contact me.

If you have any questions regarding your claim, or the information outlined in this letter, please contact me.

Sincerely,

Anita Brown
Claim Analyst
Group Life and Disability Claims
Des Moines, IA  50392-2180
Toll Free:  1-800-245-1522, Ext.  75916
Fax:  1-800-255-6609

Enclosures:    Statement of Health signed 12-28-2005 and 4-17-2006
               Voluntary Rescission of Group Term Life Insurance Coverage

## VOLUNTARY WITHDRAWAL OF GROUP
## TERM LIFE INSURANCE COVERAGE

This Voluntary Withdrawal of Group Term Life Insurance Coverage (the "Agreement") is made by and between Charles McGregor of Downers Grove, Illinois and Principal Life Insurance Company ("Principal Life"), an Iowa corporation with its principal place of business at 711 High Street, Des Moines, Iowa (collectively the "Parties").

WHEREAS, Principal Life issued a group term life insurance policy to Process and Facilities Systems, Inc. effective February 1, 2006 (the "Policy"); and

WHEREAS, Charles McGregor was eligible for life insurance equal to two times his Basic Annual Compensation, however, under the terms of the Policy, Proof of Good Health was required for coverage in excess of $100,000.00; and

WHEREAS, a Health Statement, dated December 28, 2005 was received by Principal Life in connection with Charles McGregor's request for coverage, in excess of $100,000.00, under the Policy; and

WHEREAS, Principal Life approved coverage in the amount of $150,000.00 (based on a salary of $75,000.00), under the Policy, for Charles McGregor effective February 1, 2006, based on the medical information provided in the Health Statement dated December 28, 2005; and

WHEREAS, Charles McGregor submitted another Health Statement, dated April 17, 2006, for increased life insurance coverage, under the Policy, due to a salary increase to $93,000.00 effective April 1, 2006;

WHEREAS, Principal Life approved additional coverage in the amount of $36,000.00, under the Policy, based on the medical information provided in the Health Statement dated April 17, 2006; and

WHEREAS, Principal Life received a claim for disability benefits on August 7, 2007 for Charles McGregor reporting a salary, as of December 1, 2006, of $95,680.00; therefore, Charles McGregor's life insurance, under the Policy, was increased to $192,000.00; and

WHEREAS, during the course of investigating the disability claim, Principal Life requested Charles McGregor's medical records to determine eligibility for disability benefits; and

WHEREAS, Principal Life also reviewed Charles McGregor's claim for Life Coverage During Disability in connection with life insurance coverage under the Policy; and

**NOTE:  THIS AGREEMENT AND RELEASE MAY AFFECT IMPORTANT LEGAL RIGHTS.  IT IS RECOMMENDED THAT YOU CONSULT WITH YOUR ATTORNEY BEFORE SIGNING.**

WHEREAS, Principal Life discovered discrepancies between the information on the Health Statements and Charles McGregor's medical records; and

WHEREAS, Principal Life requested an explanation from Charles McGregor regarding the discrepancies between the Health Statements and his medical records; and

WHEREAS, Principal Life determined it would not have approved Charles McGregor's group term life insurance coverage in excess of $100,000.00, under the Policy, had it been advised of his complete medical history at the time he applied for coverage; and

WHEREAS, the Parties agree to rescind Charles McGregor's group term life insurance coverage, in excess of $100,000.00, under the Policy as though it was never effective; and

WHEREAS, Principal Life agrees to refund any applicable premiums in connection with Charles McGregor's group term life insurance coverage, in excess of $100,000.00, under the Policy:

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Parties agree, understand and acknowledge as follows:

1.  Upon execution of this Agreement, Charles McGregor expressly agrees and acknowledges that his group term life insurance coverage, in excess of $100,000.00, under the Policy is rescinded and cancelled as if never effective. As a result, Charles McGregor's life insurance coverage in the amount of $100,000.00 will remain in effect as long as his coverage continues under the Policy.

2.  Upon receipt of this executed Agreement, Principal Life will refund any applicable premiums in connection with Charles McGregor's group term life insurance coverage, in excess of $100,000.00, under the Policy.

3.  Charles McGregor, with the intention of binding himself and his dependents, heirs, representatives, and assigns (hereinafter collectively referred to as "Releasor") expressly releases and forever discharges Principal Life, its affiliates, agents, employees, representatives, officers, directors and assigns (hereinafter collectively referred to as "Releasee") from any and all causes of action, lawsuits, controversies, claims, demands, and damages of any kind or character whatsoever that Releasor ever had, now has, or may have, both known and unknown, past, present, or future, or that any entity claiming by, through or under Releasor may have or claim to have against Releasee in connection with the negotiation, sale, delivery, issuance, administration, rescission, termination or withdrawal of Releasor's group term life insurance coverage, in excess of $100,000.00, under the Policy.

**NOTE: THIS AGREEMENT AND RELEASE MAY AFFECT IMPORTANT LEGAL RIGHTS. IT IS RECOMMENDED THAT YOU CONSULT WITH YOUR ATTORNEY BEFORE SIGNING.**

AS FURTHER CONSIDERATION, Releasor understands and agrees as follows:

1.      This Agreement is made in full, final and complete satisfaction, settlement and discharge of any and all claims or demands whatsoever in any way connected with or arising out of Releasor's group term life insurance coverage, in excess of $100,000.00, under the Policy.

2.      Releasor relies solely upon his own judgment, belief and knowledge in executing this Agreement.  This Agreement is made without reliance upon any statement or representation on the part of any party hereby released or said party's representatives.

3.      No promise, inducement or agreement not herein expressed has been made to Releasor. This Agreement contains the entire agreement between the Parties, and the terms of this Agreement are contractual and not a mere recital.

4.      Releasor has read this Agreement in its entirety; he understands its terms, provisions and conditions; and he freely and voluntarily signs and enters into the same.

_____          _____
Date                             Charles McGregor


                                 Principal Life Insurance Company


_____          By: _____
Date


**NOTE:  THIS AGREEMENT AND RELEASE MAY AFFECT IMPORTANT LEGAL RIGHTS.  IT IS RECOMMENDED THAT YOU CONSULT WITH YOUR ATTORNEY BEFORE SIGNING.**