IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRINCIPAL LIFE ) <br> INSURANCE COMPANY ) <br> ) <br> Plaintiff, ) <br> ) Case No.:    08 C 806 <br> v. ) <br> ) <br> CHARLES C. MC GREGOR, ) <br> Defendant. ) | |

## DEFENDANT'S ANSWER

NOW COMES Defendant Charles C. McGregor, by and through his attorneys, Richard J. Reimer and Associates LLC, Answering Plaintiff's Complaint, and states as follows:

### *Jurisdiction and Venue*

1.     That Jurisdiction of this court is based upon the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001, *et seq.* and particular, 29 U.S.C. §1132(e)(1).  Those provisions give the district court jurisdiction to hear civil actions related to employee welfare benefit plans, which, in this case, consists of a group life insurance plan, underwritten and insured by Principal Life for the benefit of employees of Process & Facilities Systems, Inc. ("PFS").  This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331.

ANSWER:   Defendant admits the allegations contained in Paragraph 1.

2.     Venue is proper in the Northern District of Illinois, 29 U.S.C. §1132(e)(2), 28

1

U.S.C. §1391.

    ANSWER:   Defendant admits the allegations contained in Paragraph 2.

### *Nature of Action*

3.    This is a claim seeking equitable rescission of life insurance coverage issued to McGregor pursuant to the terms of group life insurance policy No. GL H31272, underwritten and insured by Principal Life for the benefit of employees of PFS.  A true and correct copy of group life insurance policy No. GL H31272 is attached hereto as Exhibit A ("Ex. A") and fully incorporated by reference herein.  This action, seeking equitable rescission and declaratory judgment is brought pursuant to 29 U.S.C. §1132(a)(3) of ERISA.

    ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 3 at this time.

### *The Parties*

4.    Principal Life is an insurance company incorporated under the laws of Iowa with its principal place of business in Des Moines, Iowa, and the underwriter and insurer of the PFS group life plan.

    ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 4 at this time.

5.    McGregor is a resident and citizen of Downers Grove, DuPage County, Illinois.

    ANSWER:   Defendant admits the allegations contained in Paragraph 5.

## *Statement of Facts*

6.     Incident to his employment with PFS, McGregor, born xx/xx/1975, received short and long term disability coverage at 60% of his monthly earnings of $7,973.33 and life insurance coverage in the initial amount of $100,000.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 6 at this time.

7.     Due to salary increases, McGregor became eligible for additional $92,000 in live coverage.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 7 at this time.

8.     Coverage in excess of $100,000, either initially or through later increases, required Proof of Good Health under the Policy:

\*\*\*

e. **Proof of Good Health Requirements**

The type and form of required Proof of Good health will be determined by The Principal.  A Member must submit Proof of Good Health:
\*\*\*

(4) To make effective any Scheduled Benefit amounts for the Member that are, initially or through later increases, in excess of $100,000.00.

(Ex. A at GC 130-3)

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 8 at this time.

9. On December 28, 2005 and on April 17, 2006, McGregor applied for life insurance coverage in excess of $100,000 by providing answers to the specific questions and finally signing two Statements of Good Health as required under the Policy. True and correct copies of his Statements of Good Health are attached hereto as Exhibit B (Ex. B.").

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 9 at this time.

10. In completing the statements of good health, McGregor answered "No" to the following questions:

1. Is any person on whom coverage is requested currently receiving medical treatment, taking medication, or pregnant?

2. In the past 5 years, has any person on whom coverage is requested had surgery, been hospitalized or consulted with a doctor, had blood or other diagnostic tests (other than for HIV antibody) or been advised to receive medical treatment?

3. In the past 5 years, has any person on whom coverage is requested been diagnosed with or received treatment for any of the following (check all that apply)?

| | | | |
|---|---|---|---|
| ☐ cancer disorder | ☐ liver disorder | ☐ bone disorder | ☐ mental |
| ☐ tumors disorder | ☐ kidney disorder | ☐ joint disorder | ☐ nervous |
| ☐ heart condition | ☐ muscle disorder | ☐ urinary disorder | ☐ diabetes |
| ☐ high blood pressure | ☐ multiple sclerosis/ Neurological disorder | ☐ respiratory disorder | ☐ hepatitis |
| ☐ stroke | | | |

4.   In the past 10 years, has any person on whom coverage is requested been treated or diagnosed by a physician as having Acquired Immune deficiency Syndrome (AIDS), AIDS-Related Complex (ARC) or any other immune disorder? (Ex. B)

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 10 at this time.

11.   The Statements of Good Health require that the applicant provide details to any question in the health information section answered with "yes," including dates of diagnosis and treatments, duration of condition, symptoms, type of treatment and the respective provider's full name and address.  (Ex. B)

ANSWER:   Defendant denies the allegations contained in Paragraph 11.

12.   McGregor made no other disclosures regarding any health conditions, treatment, surgery or medications on the Statements of Good Health required to underwrite coverage in excess of $100,000.

ANSWER:   Defendant denies the allegations contained in Paragraph 12.

13.   In reliance upon the information provided on the Statements of Good Health and in the belief that the information was true and complete, Principal Life approved McGregor for and underwrote and issued an additional $92,000 in life insurance coverage under the Policy.

ANSWER:   Defendant denies the allegations contained in Paragraph 13.

14.   On May 25, 2007, McGregor left his regular occupation and in August 2007 submitted a claim for LTD benefits to Principal Life.  As part of its review of McGregor's claim, Principal Life requested medical records from Plaintiff's treating physicians Dr.

Karen Louie, Dr. David Gerard, Dr. Steven Newman and Dr. Kiran Kumar.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 14 at this time.

## COUNT I

## RESCISSION OF LIFE INSURANCE COVERAGE IN EXCESS OF $100,000 UNDER THE POLICY

15.   Principal Life incorporates paragraphs 1 through 14 above as if fully set forth herein as and or paragraphs 1 through 14 of Count I.

ANSWER:   Defendant incorporates his answers to those paragraphs as if fully pled herein.

16.   During its review of McGregor's medical records in August and September 2007, within two years of issuance of the life coverage in excess of $100,000, Principal Life discovered significant discrepancies between the information contained in the medical records and the Statements of Good Health provided by McGregor in December 2005 and in April 2006.

ANSWER:   Defendant denies the allegations contained in Paragraph 16 at this time.

17.   The medical records revealed that on July 22, 2005, McGregor underwent a chest CT with and without contrast in follow up of an abnormal chest x-ray dated July 11, 2005, a demonstrating a left lower love nodule. The findings of the CT were as follows:

> FINDINGS:  Confirmed is an approximately 11 x8 mm nodule which appears to be pleural-based and extends along the anterior chest wall and the lingual.  This is confirmed on image 28 of series 3 and Image 22 of series 4.  It may contain a small

focus of calcification peripherally.
There is mild dependent atelectasis.

There is a 5 mm nodule seen on Images 22 and 23 of series 3 and Image 10 and 9 of series 4. This is seen in the right lower lobe. There are a few tiny nodules in the right idle lobe seen just above it on images 6 and 7.

There is no definite mediastinal or hilar adenopathy. The esophagus is slightly thickened. Adrenal glands appeal normal as visualized. There is mild tatty infiltration of the liver.

The following impression was noted:

1.   Nodule seen on the chest radiograph is confirmed in the lingual, measuring 11 x8 mm and closely related to the anterior chest wall. There may be some calcification. This may in part be related to calcified granuloma. Recommended short-term follow up.

2.   5 mm nodule in the right lower lobe, as well as tiny nodules in the right middle lobe for which short-term follow-up in 3 to 6 months by CT is recommended.

3.   No definite mediastinal or hilar adenopathy.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 17 at this time.

18.   On March 2, 2006, McGregor presented to Adventist Health Partners in Downers Grove for a follow up CT scan as well as to establish care with a new primary care physician and receive a referral to a pulmonologist. The office visit notes documented diagnoses of "lung nodule, 786.6" and "asthma chronic obstructive w/ COPD unspecified, 493.20".

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 18 at this time.

19.   The follow up chest scan was performed on March 10, 2006 and McGregor

7

was informed of the result on March 16, 2006 by telephone. The chest CT report stated:

> FINDINGS: No mediastinal or hilar mass or lymphadenopathy is demonstrated. No pericardial or pleural effusions are present.
>
> Along the anterior pleura of the left upper lobe, on image 30 of series 2, there is a nodule and associated linear density which measures approximately 8x 11 mm in the axial plane. Appearance is unchanged compared to the previous study. There is a second more subtle nodule in the lateral aspect of the right lower lobe on image 25 of series 2. This measures approximately 5 mm in greatest diameter and is also unchanged compared to the previous study. More superiorly, adjacent to the minor fissure, are several additional tiny nodules, measuring 1 to 2 mm in diameter which are unchanged compared to previous. No new pulmonary nodules are demonstrated.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 19 at this time.

20.   On March 17, 2006, in correspondence to McGregor's family practitioner Dr. Kiran Kumar, pulmonologist Dr. Keith Gordey stated as follows:

> …As you know, a follow-up CT scan of the chest was performed on March 10th and reveals no change whatsoever in the dominant subpleural lingual nodule or several other small nodules. This supports that these are postinflammatory, but of course, some further follow-up is required. He had a number of questions regarding the abnormal pulmonary function tests, which were obtained at is first visit and we had an extended discussion as to how asymptomatic airflow obstruction may be present in a nonsmoker, its relationship to possible asthma, and the uncertain potential for progressive airflow obstruction. Certainly, cat dander was a major trigger and he had a cat as a pet for many years until about 1 ½ years ago.
>
> \*\*\*
>
> Mr. McGregor has stable bilateral nodular opacities on his chest CT that are likely postinflammatory. He remains asymptomatic regarding airway disease, although his abnormal pulmonary function tests do require ongoing follow-up. I think it is very reasonable to continue without specific treatment, but I would recommend follow-up complete pulmonary function tests and bronchodilator would be appropriate. The anniversary of his abnormal CT scan would be July

8

of 2007 and one more noncontrast CT of the chest in roughly one year should probably be adequate to confirm that this is benign.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 20 at this time.

21.   McGregor did not disclose any of the procedures, follow-ups, treatment and medical conditions described in paragraphs 17 through 20 on the Statements of Good Health he completed and executed on December 28, 2005 and April 17, 2006.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 21 at this time.

22.   McGregor knowingly made material misrepresentations and/or knowingly withheld material information concerning his medical history on the Statements of Good Health required for the additional $92,000 of life insurance coverage under the Policy with the actual intent to deceive Principal Life and for the purpose of inducing Principal Life to act favorably on his request for the additional coverage.

ANSWER:   Defendant denies the allegations made in paragraph 22 at this time.

23.   In underwriting and issuing an additional $92,000 in life insurance coverage to McGregor, Principal Life relied on the belief that McGregor had truthfully completed the Statements of Good Health and had disclosed his complete medical history to Principal Life.

ANSWER:   Defendant denies the allegations made in paragraph 23 at this time.

24.   The Statements of Good Health, completed and signed by McGregor, provide, in relevant part:

**Authorization, Acknowledgement and Signatures**

- I represent information, statements and answers on this form, and any attachments, are complete and true to the best of my knowledge. They are part of this request for coverage under the group policies. I agree Principal Life if not liable for anyone's claim which happens or begins before the effective date of coverage or approval of any life and disability coverage.

- I have read, or had read to me, the questions and responses and realize any false statements, omissions and/or material misrepresentation regarding age or health information could cause life and disability coverages, if issued, to be cancelled as never effective.

- Any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application nor files a claim containing false or deceptive statement, may be guilty of insurance fraud.

\*\*\*

*See Ex. B.*

ANSWER: Defendant denies the allegations made in paragraph 24 at this time.

25. The policy contains the following provision:

**Article 5 – Individual Incontestability**

All statements made by an individual insured under this Group Policy will be representations and not warranties. These statements may not be used to contest an insured person's insurance unless:

a. the insured person's insurance has been in force for less than two years during the insured's lifetime; and

b. the statement is in written form signed by the insured person; and

c. a copy of the form which contains the statement is given to the insured or the insured's beneficiary at the time insurance

> is contested.

> However, these provisions will not preclude the assertion at any time of defenses based upon the person's ineligibility for insurance under this group Policy or upon the provisions of the Group Policy.

> In addition, if a person's age is misstated, we may, at any time, adjust premiums and benefits to reflect the correct age.

(Ex. A at GC 114-5 A-1)

ANSWER:   Defendant denies the allegations made in paragraph 25 at this time.

26.   On October 10, 2007, Principal Life contacted McGregor asking him to clarify the discrepancies in his medical history as documented in his medical records and his answers on the Statements of Good Health by October 23, 2007.  A true and correct copy of Principal Life's October 10, 2007 correspondence is attached hereto as Exhibit C. ("Ex.C.")

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 26 at this time.

27.   After receipt of McGregor's response, *inter alia*, claiming that he did not consider the diagnostic tests undergone for his lung nodules to be treatment, Principal Life contacted McGregor in correspondence dated November 12, 2007, informing him of its rescission of the additional basic life coverage in excess of $100,000 and requesting him to sign a rescission agreement enclosed with the correspondence.  A true and correct copy of Principal Life's November 12, 2007 correspondence is attached hereto as Exhibit D (Ex. D").

ANSWER:   Defendant lacks sufficient information to answer the allegations

contained in Paragraph 27 at this time.

28.     McGregor refused to sign the agreement.

ANSWER:   Defendant lacks sufficient information to answer the allegations contained in Paragraph 28 at this time.

29.     McGregor's additional life coverage in the amount of $92,000 under the Policy is void *ab initio* based on the material misrepresentations and/or omissions made by McGregor in his Statements of Good Health.

ANSWER:   Defendant denies the allegations contained in Paragraph 29 at this time.

30.     The information provided on the Statements of Good Health submitted by McGregor was fraudulent and materially false.

ANSWER:   Defendant denies the allegations contained in Paragraph 30 at this time.

31.     McGregor knowingly failed to disclose material information and made material misrepresentations concerning his health and medical history on the Statements of Good Health for the purpose of inducing Principal Life to act favorably on his request for additional coverage in excess of $100,000.

ANSWER:   Defendant denies the allegations contained in Paragraph 31 at this time.

32.     Principal Life reasonably relied to its detriment upon the misrepresentations made on the Statements of Good Health in connection with the issuance of additional life insurance coverage in the amount of $92,000 to McGregor.

ANSWER: Defendant denies the allegations contained in Paragraph 32 at this time.

33. McGregor's non-disclosure and misrepresentation of his medical history materially affected the risk and/or the liability assumed by Principal Life in underwriting and issuing an additional $92,000 in life insurance coverage to McGregor.

ANSWER: Defendant denies the allegations contained in Paragraph 33 at this time.

34. Had Principal Life known the true facts concerning McGregor's complete medical history at the time McGregor applied for the additional life insurance coverage, it would have declined coverage based on the risk classification for "solitary pulmonary nodule."

ANSWER: Defendant denies the allegations contained in Paragraph 34 at this time.

35. Had Principal Life known that McGregor had been diagnosed with a lung nodule and was undergoing extensive testing relative to same as well as carried an active diagnosis of chronic obstructive asthma and chronic obstructive pulmonary disease, it would have declined coverage.

ANSWER: Defendant denies the allegations contained in Paragraph 35 at this time.

36. The life coverage was non-contributory and no premium payments are owed to McGregor. Principal Life is processing a refund of premium payments to the policyholder, if any, simultaneously with seeking relief with the Court.

ANSWER: Defendant denies the allegations contained in Paragraph 36 at this time.

Respectfully Submitted,

/s/ *Richard J. Reimer*

Richard J. Reimer
Attorney in this matter for Defendant

Richard J. Reimer
Richard J. Reimer and Associates, LLC
15 Spinning Wheel Road, Suite 310
Hinsdale, IL 60521
Ph.  (630) 654-9547
Fax  (630) 654-9676

## JURY DEMAND

The Defendant, Charles McGregor, hereby demands trial by jury.

Respectfully Submitted,

/s/ *Richard J. Reimer*

Richard J. Reimer
Attorney in this matter for Defendant

Richard J. Reimer
Richard J. Reimer and Associates, LLC
15 Spinning Wheel Road, Suite 310
Hinsdale, IL 60521
Ph.  (630) 654-9547
Fax  (630) 654-9676